GARY M. RESTAINO
United States Attorney
District of Arizona

PETER SEXTON
Arizona State Bar No. 011089
LINDSAY SHORT
Arizona State Bar No. 034125
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Ste. 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Emails: Peter.Sexton@usdoj.gov
Lindsay.Short@usdoj.gov
Attorneys for Plaintiff

FILED ___ LODGED
RECEIVED ___ COPY

SEP 1 9 2023

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

SEALED

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

CR-23-1321-PHX-SMB (DMF)

| United States of America, | | |
|---|---|---|
| Plaintiff, | VIO: | 18 U.S.C. § 1343<br>(Wire Fraud)<br>Counts 1-44 |
| v. | | |
| 1. Luis Ortega,<br>(Counts 1-42, 45-55) | | 18 U.S.C. § 1957(a)<br>(Transactional Money Laundering)<br>Counts 45-55 |
| 2. Jeremie Sowerby,<br>(Counts 43-44) | | 18 U.S.C. § 981(a)(1)(C);<br>18 U.S.C. § 982(a)(1);<br>21 U.S.C. § 853;<br>28 U.S.C. § 2461(c)<br>(Forfeiture Allegations) |
| Defendants. | | |

**INDICTMENT**

THE GRAND JURY CHARGES:

1. On or about and between May 2017 through December 2018, in the District of Arizona and elsewhere, defendants Luis Ortega ("ORTEGA") and Jeremie Sowerby

("SOWERBY"), and others known and unknown to the Grand Jury, under the guise of three fraudulent businesses called Now Mining, VIP Mining, and Millennium Technologies, scammed hundreds of victims out of millions of dollars in a cryptocurrency investment fraud scheme.

### *Individual Defendants and Fraudulent Enterprises*

2. Defendant LUIS ORTEGA was held up to be the Chief Executive Officer for these three fraudulent enterprises. ORTEGA regularly misrepresented and mischaracterized his employment history, business background, and financial expertise to victim investors. Before 2017, ORTEGA had no meaningful background, experience, or knowledge about cryptocurrency mining or trading operations. For each fraudulent cryptocurrency enterprise, ORTEGA represented himself as an owner, manager, and salesman. Along with co-defendant JEREMIE SOWERBY, they deceived victims out of millions and siphoned the victim funds to bank accounts they controlled and later depleted for their own personal expenses and lavish lifestyles.

3. Defendant JEREMIE SOWERBY was held up to be the primary salesperson for each of the three entities. SOWERBY also misrepresented and mischaracterized ORTEGA's employment history, business background, and financial expertise to victim investors. SOWERBY had no meaningful background, experience, or knowledge about cryptocurrency mining or trading operations. Together with ORTEGA, he created deceptive sales presentations that contained elaborate lies and dishonest investment opportunities. For each fraudulent cryptocurrency enterprise, SOWERBY also represented himself as an owner, manager, and salesman in each fraudulent enterprises.

### *Now Mining*

4. **Now Mining** was the first entity ORTEGA and SOWERBY fraudulently marketed to victims. In October 2017, it was registered as a domestic corporation with the Arizona Corporation Commission. Now Mining was deceptively marketed as a risk-free investment in "leases" of Bitcoin mining machines.

5. Defendants, through Now Mining, falsely and fraudulently claimed to

victims:

- That Now Mining had Bitcoin leases through a foreign business partnership.
- That ORTEGA was formerly Amazon's head of logistics for the western region.
- That ORTEGA became "a leader, a technology visionary, and a pioneer in the cryptocurrency industry."
- That defendants' mining machines were located abroad where electricity to run them was cheaper.
- That Now Mining had extensive business relationships in England and other areas outside of Arizona.
- That the United States Securities and Exchange Commission ("SEC") and the United States Federal Trade Commission ("FTC") audited and certified Now Mining's "hash rate" (the rate at which a cryptocurrency mining machine operates).
- That the SEC and FTC purportedly validated their business operations.
- That initial investors in Now Mining had already made back their initial investments within 90 days and were continuing to obtain higher earnings and profits from their investments.

6. During elaborate marketing presentations using high-pressure sales tactics, defendants fraudulently claimed and implied that there were earlier investors in Now Mining who had mined Bitcoins and earned substantial sums, and that these investors already profited from their earlier investments. In these sales pitches, defendants disingenuously structured investments to match whatever amounts victim investors could afford. For example:

- The smallest investment package cost $500 for a one-sixth investment in a single mine (i.e., machine), purportedly earning $5 to $7 daily (or approximately $1,825 to $2,555 annually).

- The $3,000 investment package was for a full mine (machine), purportedly earning $30 to $40 daily (or approximately $11,000 to $14,600 annually).
- The $100,000 investment package purportedly invested in approximately 33 mines (machines), purportedly earning $1,200 daily (or approximately $438,000 annually).

7. To augment the pool of victim-investors and further deceive existing victim-investors, defendants infused multi-level marketing (MLM) components into each of their fraudulent businesses. Unsophisticated victims were given additional false incentives to recruit others to invest in these fraudulent schemes. Defendants created a false incentive structure to entice other victims to invest in this fraud scheme, using false promises of sharing profits and winning lavish prizes like Rolex watches or Ferraris.

8. After deceiving victims to "invest" in Now Mining, defendants took money from victims in about every way possible: wire transfers to Now Mining's bank accounts, payments via Zelle or PayPal, personal or cashier's checks, cash given directly to defendants, or even in Bitcoin or other cryptocurrency transfers. Defendants further deceived victims by falsely telling them that their "mining" profits were digitally transferred to computer-based wallets that victims purportedly could view, access, and liquidate weekly through a Now Mining website.

9. From on or about July 2017 through on or about January 2018, defendants defrauded about 290 victims of approximately $6,282,775. This money was wrongly deposited into, and transferred between, seventeen (17) banks controlled individually by either ORTEGA, SOWERBY, or SOWERBY's girlfriend (K.B.). No victim funds in Now Mining were used to lease or buy cryptocurrency mining machines that generated profits for any of the victim-investors in Now Mining. Instead, approximately two million dollars of investor funds were inappropriately used by defendants to buy actual Bitcoins in the market, and some of the Bitcoins were then used in a deceptive way by defendants to make it appear to victims that their actual investments were used to lease legitimate mining machines that purportedly generated profits for victims. Most of the $2,000,000 in actual

Bitcoins that defendants fraudulently purchased was never disbursed to victims, and the $6.2 million in victim funds overall were either moved to private accounts controlled by defendants or spent by defendants to buy homes and live lavishly.

### *VIP Mining*

10. **VIP Mining** or **VIP Mining Global** was the second entity that defendants, and others, fraudulently marketed to victims. In or about January 2018, it was registered as a domestic corporation with the Arizona Corporation Commission. It used Now Mining's same domestic address and UPS mailbox for its statutory agent, manager, and member. VIP Mining was used by defendants to continue defrauding victims from approximately February 1, 2018, until November 30, 2018 – a mere 10 months.

11. Because ORTEGA and SOWERBY had not been putting Now Mining investor funds into "leasing" machines as they had promised investors, defendants became desperate and began using defrauded Now Mining investor funds to speculate in virtual currency arbitrage to try and recover their massive investor losses. When that didn't work, defendants shifted again, and decided to form another fraudulent venture called VIP Mining.

12. VIP Mining was very similar to Now Mining, but instead of "leasing" mining machines, VIP Mining claimed it would "purchase" actual Bitcoin mining machines for investors. With some of the defrauded funds, defendants purchased approximately 1,200 Bitcoin mining machines, but never created the necessary infrastructure to power and cool the mining machines they bought. Thus, very little was ever earned by the few machines ever put into use.

13. With VIP Mining, defendants again lied about their background and expertise. With VIP Mining, defendants fraudulently raised about $726,000 from victim-investors, but instead of telling victims this time that their investments were for "leasing" cryptocurrency machines, defendants changed their pitch and told victims that they were now "buying" the machines for victims, and that the machines would be hooked up to power in some special VIP Mining facilities, which defendants misleading called "high

voltage secure mining spaces (HVSMS)".

14. Defendants purchased about 1200 actual Bitcoin mining machines with about $2.5 million of victim money previously defrauded through both Now Mining and VIP Mining, but only a fraction of Bitcoin machines were ever hooked up to power and turned on. Defendants tried to establish two VIP Mining warehouses – one in Phoenix and one in Tempe. About 200 machines were earmarked for the Phoenix location and 1,000 machines for the Tempe site. From inception, both facilities had insufficient power and cooling capacity, and defendants lacked the skills and means to operate either facility. Little or no income was generated by these approximately 1200 machines (most of which were never hooked up to power), and eventually defendant ORTEGA absconded with most of these mining machines in October 2018.

15. To victims, however, defendants claimed these HVSMS facilities were operational and state-of-the-art, and further falsely claimed in their promotional materials that each HVSMS had the following features (which neither did):

- High Voltage Electrical Supply
- Climate Control
- Smart Energy Regulation
- On-Site Operational Support
- On-Site Technical Support
- Enhanced Security Systems
- Live Video Broadcasting Feed of Machines for Users
- High-End DSL/Cable and Fiber Broad-Band Connections

16. To augment the pool of victim-investors and further deceive existing and new victim-investors, defendants again used multi-level marketing (MLM) components in the VIP Mining phase of the fraud scheme. Defendants created a similar but equally unattainable incentive structure to encourage victims to invest in this ongoing fraud scheme, using similar false promises of profit sharing and winning lavish prizes, but instead of getting a Rolex watch or a Ferrari, it now was a Cadillac Escalade or a Lamborghini.

17. This component of the scheme raised around $726,000 from about 80 victims. As before, there were few or no accounting records, and these victim funds also went into the bank accounts controlled by ORTEGA, SOWERBY, and SOWERBY's girlfriend (KB). No investors received any mining machines, and the VIP Mining website gave victims no meaningful access to liquidate any professed earnings. Defendants continued to move investor funds into private bank accounts they controlled and used the money to fund their expensive lifestyles.

### *Millennium Technologies*

18. **Millennium Technologies** ("Millennium") was the third entity defendants fraudulently marketed to victims. In March 2018, it was registered as a domestic corporation with the Arizona Corporation Commission. It used the same domestic address and UPS mailbox for its statutory agent, manager, and member, as was used for Now Mining and VIP Mining. Millennium Technologies was used by defendants to continue defrauding victims from approximately on or about December 2017 to on or about May 2018. Millennium was marketed primarily to VIP Mining victims.

19. Defendants, through Millennium, falsely and fraudulently claimed to victims:

- That it was a real estate development and technology company that designed, built, and funded custom smart homes.
- That victims could design and buy pre-constructed smart homes built from recycled shipping containers.
- That designed custom homes could be built and bought using the "Millennium" cryptocurrency.
- That no other cryptocurrency "has end-to-end infrastructure to support designing, building, and buying homes like the 'Millennium Network.'"
- That victim-investors could buy so-called Millennium coins/tokens at a steep discount before the currency's "initial coin offering" purportedly set

for April 2018. Victims were falsely told the coins/tokens would triple in value before the April 2018 offering to the public.

- That victims could obtain and use their coins through the Millennium website, which never gave victims any meaningful way to access, trade, or use any coins they purportedly earned.

20. Defendants produced elaborate and deceptive marketing materials. They falsely described a sophisticated and embellished corporate structure, and grossly lied about Millennium's actual business operations. Defendants had no meaningful record-keeping or accounting processes, and victim "investments" were siphoned immediately to private and personal financial accounts owned and controlled by defendants.

21. This component of the scheme raised around $500,000 from about 20 victims. Like the other two fraudulent businesses, there were no business records, and victim funds only went to ORTEGA, SOWERBY, and SOWERBY's girlfriend (KB). No "investors" received any profits from this fraudulent variation of the other two dishonest campaigns, and victims were never given any meaningful access to liquidate any professed earnings. Defendants continued to move investor funds into private bank accounts they controlled and used the money to continue funding their expensive lifestyles.

## MANNER AND MEANS

22. Between in or about May 2017 through December 2018, approximately 400 victims were defrauded in this scheme, collectively suffering losses greater than $7.5 million. The defrauded funds were controlled by and used personally by defendants and their associates.

## THE SCHEME

23. The factual allegations in Paragraphs 1 to 22 are incorporated by reference and re-alleged as though fully set forth herein.

24. From in or about and between May 2017 through December 2018, defendants LUIS ORTEGA and JEREMIE SOWERBY, and others, devised and intended to devise a scheme to defraud Now Mining, VIP Mining, and Millennium Technologies

investors, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

25. It was part of the scheme:

a. That defendants ORTEGA and SOWERBY significantly misrepresented and mischaracterized their employment histories, business backgrounds, and financial expertise. They falsely claimed to victim-investors that they had meaningful experience and knowledge about cryptocurrencies when, in fact, they were neophytes in computer coding, power usage, cooling requirements, and facilities management.

b. That defendants fraudulently stated at conferences and in marketing materials that they had extensive business relationships abroad and outside Arizona, and that they had extensive Bitcoin leases through foreign partnership arrangements.

c. That defendants mislead victim-investors with fabrications that the SEC and FTC audited and certified Now Mining's "hash rate" (the rate at which a cryptocurrency mining machine operates).

d. That defendants fraudulently told victim-investors that others had invested before them and had already made their initial investments back and much more, and that profits were digitally transferred to computer-based wallets that victims were falsely told they could access and liquidate immediately.

e. That as the defendant's scheme evolved to include VIP Mining, the deceptive "leasing" part of the scheme shifted to "purchasing" Bitcoin machines and housing them in so-called state of the art "High Voltage Secure Mining Spaces [HVSMS]." In fact, however, the HVSMS locations were never remotely completed, and only a few machines were ever hooked up, powered, or earned any profits whatsoever.

f. That defendants misled existing victims into luring others into investing in this fraudulent scheme by creating false but unachievable recruiting incentives (i.e., Ferraris, Lamborghinis, Rolexes).

## COUNTS 1 - 44
## 18 U.S.C. § 1343
## [Wire Fraud]

26. The factual allegations in the preceding paragraphs of this Indictment are re-alleged and incorporated as though fully set forth herein.

27. From on or about November 2017 to on or about October 2018, defendants LUIS ORTEGA, JEREMIE SOWERBY, and others, knowingly and willfully devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and by intentional concealment and omission of material facts. On or about each of the dates set forth below, in the District of Arizona and elsewhere, defendants ORTEGA and SOWERBY, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce certain writings, pictures, signals, and sounds with each transmission constituting a separate count:

| Count | On or About Wire Date | Defendant | Sender | Recipient | Amount |
|---|---|---|---|---|---|
| 1 | 11/24/2017 | ORTEGA | C.M. | Now Mining (Bank of America ("B of A") Account -6218) | $46,000.00 |
| 2 | 11/28/2017 | ORTEGA | C.M. | Now Mining (B of A Account -6218) | $22,000.00 |
| 3 | 11/30/2017 | ORTEGA | C.M. | Now Mining (B of A Account -6218) | $26,000.00 |
| 4 | 12/7/2017 | ORTEGA | C.M. | Now Mining (B of A Account -6218) | $15,500.00 |
| 5 | 12/14/2017 | ORTEGA | C.M. | Now Mining (B of A Account -6218) | $10,000.00 |
| 6 | 12/28/2017 | ORTEGA | C.M. | Now Mining (B of A Account -6218) | $12,000.00 |
| 7 | 12/12/2017 | ORTEGA | N.M. | Now Mining (B of A Account -6218) | $12,000.00 |
| 8 | 12/22/2017 | ORTEGA | N.M. | Now Mining (B of A Account -6218) | $20,000.00 |
| 9 | 11/16/2017 | ORTEGA | C.M. | K.B. (JP Morgan Chase ("Chase") Account) | $8,500.00 |

| | | | | | |
|---|---|---|---|---|---|
| | | | | -1869. | |
| 10 | 11/16/2017 | ORTEGA | C.M. | K.B. (Chase Account -1869) | $3,000.00 |
| 11 | 1/3/2018 | ORTEGA | C.M. | Global Works, LLC (Chase Account -6773) | $7,500.00 |
| 12 | 1/10/2018 | ORTEGA | C.M. | Global Works, LLC (Chase Account -6773) | $14,000.00 |
| 13 | 1/19/2018 | ORTEGA | C.M. | Global Works, LLC (Chase Account -6773) | $11,700.00 |
| 14 | 1/24/2018 | ORTEGA | N.M. | Global Works, LLC (Chase Account -6773) | $10,000.00 |
| 15 | 2/15/2018 | ORTEGA | C.M. | Global Works, LLC (Chase Account -6773) | $5,000.00 |
| 16 | 12/26/2017 | ORTEGA | D.K. | Now Mining (B of A Account -6218) | $5,000.00 |
| 17 | 1/10/2018 | ORTEGA | D.K. | Now Mining (B of A Account -6218) | $3,000.00 |
| 18 | 1/11/2018 | ORTEGA | R.K. | Now Mining (B of A Account -6218) | $50,000.00 |
| 19 | 1/24/2018 | ORTEGA | R.K. | Now Mining (B of A Account -6218) | $50,000.00 |
| 20 | 12/15/2017 | ORTEGA | D.G. | Now Mining (B of A Account -6218) | $15,000.00 |
| 21 | 1/4/2018 | ORTEGA | D.G. | Now Mining (B of A Account -6218) | $23,000.00 |
| 22 | 1/12/2018 | ORTEGA | D.G. | Now Mining (B of A Account -6218) | $50,000.00 |
| 23 | 1/12/2018 | ORTEGA | D.G. | Now Mining (B of A Account -6218) | $20,000.00 |
| 24 | 1/18/2018 | ORTEGA | B.G. | Now Mining (B of A Account -6218) | $75,000.00 |
| 25 | 1/16/2018 | ORTEGA | D.G. | Global Works, LLC (Chase Account -6773) | $1,000.00 |
| 26 | 1/22/2018 | ORTEGA | D.G. | Global Works, LLC (Chase Account -6773) | $11,000.00 |
| 27 | 1/25/2018 | ORTEGA | D.G. | Global Works, LLC (Chase Account -6773) | $4,000.00 |
| 28 | 12/14/2017 | ORTEGA | I.S. | Now Mining (B of A Account -6218) | $5,001.10 |
| 29 | 1/17/2018 | ORTEGA | I.S. | Now Mining (B of A Account -6218) | $120,000.00 |
| 30 | 1/17/2018 | ORTEGA | I.S. | Millennium Coin | |

| | | | | (Bitcoin) | $26,995.92 |
|---|---|---|---|---|---|
| 31 | 1/16/2018 | ORTEGA | M.O. | Now Mining (B of A Account -6218) | $200,000.00 |
| 32 | 1/31/2018 | ORTEGA | R.O. | Global Works, LLC (Chase Account -6773) | $15,000.00 |
| 33 | 11/15/2017 | ORTEGA | M.P. | K.B. (Chase Account – 1869) | $10,000.00 |
| 34 | 11/28/2017 | ORTEGA | M.P. | C.M. & N.M. (Wells Fargo Account -9292) | $10,000.00 |
| 35 | 11/30/2017 | ORTEGA | M.P. | C.M. & N.M. (Wells Fargo Account -9292) | $15,000.00 |
| 36 | 12/19/2017 | ORTEGA | M.P. | Now Mining (B of A Account -6218) | $7,000.00 |
| 37 | 12/26/2017 | ORTEGA | M.M. | Now Mining (B of A Account -6218) | $35,000.00 |
| 38 | 1/26/2018 | ORTEGA | CW1 | Global Works, LLC (Chase Account -6773) | $20,000.00 |
| 39 | 2/16/2018 | ORTEGA | T.H. | Global Works, LLC (Chase Account -6773) | $15,000.00 |
| 40 | 3/19/2018 | ORTEGA | P.C. | Global Works, LLC (Chase Account -6773) | $10,000.00 |
| 41 | 1/2/2018 | ORTEGA | N.K. | Now Mining (B of A Account -6218) | $35,000.00 |
| 42 | 1/9/2018 | ORTEGA | N.K. | Now Mining (B of A Account -6218) | $7,000.00 |
| 43 | 9/22/2018 | SOWERBY | J.W. | Global Works, LLC (Chase Account -6773) | $51,500.00 |
| 44 | 10/18/2018 | SOWERBY | C.O. | Global Works, LLC (Chase Account -6773) | $10,600.00 |

All in violation of Title 18, United States Code, Section 1343.

**COUNTS 45-55**
**18 U.S.C. § 1957(a)**
**[Transactional Money Laundering]**

28. The factual allegations in the preceding paragraphs of this Indictment are re-alleged and incorporated as though fully set forth herein.

29. On or about the dates listed below, in the District of Arizona and elsewhere, defendant LUIS ORTEGA knowingly engaged in monetary transactions, of a value greater

- 12 -

than $10,000, occurring within the United States, with funds criminally derived from the Wire Fraud in violation of 18 U.S.C. § 1343, with each transaction being a separate count of this Indictment:

| Count | Date | Monetary Transaction | Transaction Amount |
|---|---|---|---|
| 45 | 1/5/2018 | Withdrawal from B of A Account -6218 to Fidelity National Title | $460,048.99 |
| 46 | 1/11/2018 | Withdrawal from B of A Account -6218 to Fashion Business Advisory | $150,000.00 |
| 47 | 1/22/2018 | Withdrawal from B of A Account -6218 to Societe Generale FZE | $500,000.00 |
| 48 | 1/25/2018 | Withdrawal from B of A Account -0025 to Surprise Ford | $46,258.80 |
| 49 | 4/17/2018 | Withdrawal from B of A Account -2475 for cashier's check payable to ORTEGA | $27,276.40 |
| 50 | 4/17/2018 | Cash withdrawal from Wells Fargo Account -2092 | $20,000.00 |
| 51 | 5/1/2018 | Cash withdrawal from Wells Fargo Account -7286 | $17,200.00 |
| 52 | 5/1/2018 | Cash withdrawal from Wells Fargo Account -2092 | $12,800.00 |
| 53 | 5/2/2018 | Cash withdrawal from Wells Fargo Account -2092 | $100,000.00 |
| 54 | 6/4/2018 | Cash withdrawal from Wells Fargo Account -7882 | $22,571.41 |
| 55 | 6/5/2018 | Cash withdrawal from Wells Fargo Account -7286 | $12,422.01 |

All in violation of Title 18, United States Code, Section 1957(a).

### FORFEITURE ALLEGATION
### 18 U.S.C. § 981(a)(1)(C); 18 U.S.C. § 982(a)(1); 21 U.S.C. § 853; 28 U.S.C. § 2461(c)

30. The factual allegations in Counts 1 through 55 in the preceding paragraphs of this Indictment are re-alleged and incorporated as though fully set forth herein.

31. Pursuant to Title 18, United States Code, Sections 981 and 982, Title 21, United States Code, Section 853, and Title 28, United States Code, Section 2461(c), and upon conviction of one or more of the offenses alleged in Counts 1 through 55 of this Indictment, defendant(s) shall forfeit to the United States all right, title, and interest in any and all property, real or personal, involved in such offense(s), or any property traceable to such property involved in the offense(s), or conspiracy to commit such offense(s), including the following: (a) all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of a statute listed in Title 18, United States Code, Section 982, (b) all other property constituting proceeds obtained as a result of those violations, and (c) all property used in any manner or part to commit or to facilitate the commission of those violations including, but not limited to the sum of money representing the amount of money involved in the offense(s) and the property named below.

  a. The property at 28736 North 20th Lane, Phoenix, Arizona 85085, titled to Sorbes Group, LLC.

  b. The property at 2515 East 1000 South, Lynn, Indiana 47355, titled to Global Works, LLC.

  c. The property at 5416 North 81st Avenue, Glendale, Arizona 85303, titled to Juliet Rozo.

  d. The property at 300 S. 13th Street, Richmond, Indiana 47374, titled to Global Works, LLC.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

(1) cannot be located upon the exercise of due diligence,

(2) has been transferred or sold to, or deposited with, a third party,

(3) has been placed beyond the jurisdiction of the court,

(4) has been substantially diminished in value, or

(5) has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of said defendant(s) up to the value of the above-described forfeitable property, pursuant to Title 21, United States Code, Section 853(p).

All in accordance with Title 18, United States Code, Sections 981 and 982, Title 21, United States Code, Section 853, Title 28, United States Code, Section 2461(c), and Rule 32.2, Federal Rules of Criminal Procedure.

A TRUE BILL

*s/*
FOREPERSON OF THE GRAND JURY
Date: September 19, 2023

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/*
PETER SEXTON
LINDSAY SHORT
Assistant U.S. Attorneys